## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| KATIE McDANIEL, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. _____ |
| | ) | JURY DEMANDED |
| JTEKT AUTOMOTIVE TENNESSEE-VONORE, LLC a/k/a JTEKT AUTOMOTIVE TENNESSEE-VONORE CO., and JTEKT NORTH AMERICA, INC., | ) ) ) ) ) ) ) | |
|     Defendants. | ) | |

## COMPLAINT

Comes the Plaintiff, Katie McDaniel, by and through Counsel, and for her cause of action against JTEKT Automotive Tennessee-Vonore, LLC a/k/a JTEKT Automotive Tennessee-Vonore, Co. and JTEKT North America, Inc., would respectfully show the following:

1. The Plaintiff is a citizen and resident of Madisonville, Tennessee, located in Monroe County, Tennessee.

2. The Defendant JTEKT Automotive Tennessee-Vonore, LLC a/k/a JTEKT Automotive Tennessee-Vonore Co. is a Tennessee company engaged in the manufacture and sale of steering systems, driveline components, bearings, machine tools, electronic control devices, etc. Its principal place of business is 55 Excellence Way, Vonore, Tennessee 37885, and it may be served with process through its registered agent, CT Corporation System, Suite 2021, 800 S. Gay Street, Knoxville, TN 37929-9710.

3. The Defendant JTEKT North America, Inc. is a Delaware company doing business in Tennessee and may be served with process through its registered agent, Corporation

Service Company, 2908 Poston Avenue, Nashville, TN 37203-1312.  Upon information and belief, JTEKT North America, Inc., is a parent corporation or has an ownership or management interest in JTEKT Automotive Tennessee-Vonore, LLC a/k/a JTEKT Automotive Tennessee-Vonore Co.  For purposes of this Complaint, the Defendants shall be referred to collectively as "JTEKT."

4. This is an action to recover for unlawful discrimination, harassment, and constructive discharge against the Plaintiff due to her sex, female, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*  This Court has jurisdiction under 42 U.S.C. §2000e(f), as well as 28 U.S.C. §1331 and 1343.

5. The Plaintiff began her employment with JTEKT in May of 2004.  JTEKT is a manufacturing facility of automotive parts.  The Plaintiff worked in various positions, including hose assembly, gear stands, and machine line.

6. In January of 2011, the Plaintiff hurt her back while off-duty and was placed on light duty work.  She worked as a materials handler and began working with Bill Fain, who would give her instructions.

7. Mr. Fain starting approaching the Plaintiff and spending excessive time talking to her, so much so that it made her uncomfortable.  He would show the Plaintiff pictures of girls he would be talking to on the phone.  He began touching her arm or back when he would talk to her, and he did this about five or six times a day.  Mr. Fain's excessive attention and excessive touching made the Plaintiff uncomfortable.

8. In mid-February of 2011, the Plaintiff was training a co-worker, Billy Goodman.  Mr. Fain kept interrupting the training, saying he had to tell the Plaintiff something.  When the Plaintiff finally told him to say what he needed to say, Mr. Fain said, "What? I thought you loved

2
Case 3:12-cv-00351-TAV-CCS   Document 1   Filed 07/12/12   Page 2 of 8   PageID #: 2

me?" This comment made the Plaintiff uncomfortable. About five minutes later, Mr. Fain walked up to the trainee and said, "If I kill her, do you think you could handle this by yourself?" This comment made the Plaintiff very uncomfortable because the Plaintiff had heard that Mr. Fain's girlfriend had recently killed herself in Mr. Fain's apartment.

9. The Plaintiff reported Mr. Fain's comments and actions to her direct supervisor, Scott Thompson, who was her team leader. Mr. Thompson did not seem concerned, so the Plaintiff reported it to Brent Smith, who was the unit manager. The Plaintiff told Mr. Smith what Mr. Fain had been doing and that it was making her uncomfortable. Mr. Smith said to let him take care of it and not to go to human resources because it would get Mr. Smith in trouble.

10. Nothing changed after the Plaintiff reported her concerns to Mr. Smith. Mr. Fain continued to bother her, talk to her excessively, and touch her while talking.

11. In early March, the Plaintiff was trying to train a different employee named Geno. Mr. Fain kept coming up to the Plaintiff and asking her to help him wipe out dirty boxes. She kept telling him that she was training someone and did not have time, and eventually Mr. Fain said, "You will have time."

12. Mr. Fain then told the Plaintiff that he had obtained permission from Mr. Smith for the Plaintiff to work with Mr. Fain for three days the following week. At one point, Mr. Smith walked by and saw that the Plaintiff was upset at being forced to work with Mr. Fain for three days. When Mr. Smith asked the Plaintiff if she was o.k., Mr. Fain said, "She's just worried about our three days next week," making a joke about the Plaintiff being uncomfortable. Mr. Fain then continued to come into where the Plaintiff was working and talk to her to try to get her to help him make labels for their work together the following week. Mr. Fain put his hand on her back while talking to the Plaintiff, which made her uncomfortable. The Plaintiff

continued working until her lunch break. She ate lunch in her truck and waited until she knew Mr. Fain had gone for the day. She then sent a text message to Mr. Smith, which was her second complaint against Mr. Fain, and she told Mr. Smith that she did not want to work on the labels with Mr. Fain. She told Mr. Smith that she had previously explained why Mr. Fain made her uncomfortable, and she asked that Mr. Smith respect her request. Mr. Smith's reply was that labels were a priority.

13. The week of March 14, the Plaintiff sat at an office desk in the front office and made labels. Mr. Fain came in and told her that she needed to get contact cleaner out of a closet. She told him that he needed to get the contact cleaner, and he said, "Ok. If you tell anyone, I'll kill you."

14. Each day, Mr. Fain would come to the Plaintiff first thing in the morning to talk to her and then would come and bother her multiple times throughout the day. The Plaintiff tried ignoring him and being rude to him, but he kept bothering her to the point that she did not want to come to work anymore. Mr. Fain would get too close to the Plaintiff and would touch her arm or her back.

15. The Plaintiff reported her concerns to Mr. Smith again, for the third time. She told him that Mr. Fain was continuing to touch her and that she was very uncomfortable that he would not leave her alone. However, nothing happened.

16. On March 31, 2011, the Plaintiff was talking with another employee, Mitchell Bolix. Mr. Fain came up behind the Plaintiff and put his hand on her arm. The Plaintiff jerked away and told him very sternly not to touch her. She then walked away to the break room to try to calm herself down. Mr. Fain followed her and said, "Dang girl." The Plaintiff said, "Listen, you need to stop coming to me with every little thing, it's really f'ing annoying, and you need to

4

leave me alone." She then left the break room and went to the office in her department. She was very shaken up.

17. Shortly after, the Plaintiff was called to the office to meet with Terry Knight, who is in charge of human resources. Mr. Knight was having a meeting with Mr. Fain, Scott Thompson, and Brent Smith. When they were finished, Mr. Knight, Mr. Thompson and Mr. Smith met with the Plaintiff. Mr. Knight asked if the Plaintiff said the "F word" to Mr. Fain, and she told him it was possible that she had. Mr. Knight told her that she couldn't use that word. He then turned the meeting over to Mr. Smith, and Mr. Smith told the Plaintiff that she needed to start attending 7:00 a.m. meetings. The Plaintiff told Mr. Smith that was not a problem but that she did not think that was why they were having the meeting. Mr. Knight then asked, "Well, why are we having the meeting?" The Plaintiff said because of Mr. Fain constantly harassing her, bothering her, and touching her. Mr. Knight then stated that this was unacceptable and that the Plaintiff should have reported it. The Plaintiff told him that she had complained three times already to Mr. Smith, and Mr. Smith admitted that she had reported it. The Plaintiff was upset during the meeting and was crying.

18. After the meeting, the Plaintiff took some vacation days because she was so upset at the way her complaints had been handled. JTEKT has a harassment policy that says employees are to report any harassment to their supervisor, which is what the Plaintiff did. The Plaintiff was specifically told by her supervisor not to report her concerns to human resources, and she was assured by her supervisor that he would handle the situation. When the situation wasn't handled, and the Plaintiff was forced to finally just tell Mr. Fain herself to leave her alone, she was called in by human resources and disciplined for using the F word.

5

19. Because JTEKT did not take her complaints seriously and did not do anything to correct Mr. Fain's inappropriate behavior, the Plaintiff could not continue to work there. She did not feel safe or comfortable, and she felt she had no choice but to quit.

20. On October 6, 2011, the Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission. A copy of that charge is attached as <u>Exhibit A.</u>

21. On May 1, 2012, the Equal Employment Opportunity Commission issued a Notice of Right to Sue. The Plaintiff received the Notice on May 6, 2012. A copy of the Notice of Right to Sue is attached as <u>Exhibit B.</u>

22. The Plaintiff, a member of a protected class, was subjected to unwelcome sexual harassment by Mr. Fain. This harassment was based on the Plaintiff's sex, female. The harassment created a hostile, offensive, or intimidating work environment that was severe and pervasive. The Plaintiff reported the harassment to her supervisor, but nothing was done to correct the harassment. Thus, the Defendants knew of the charged harassment but failed unreasonably to take prompt and corrective action. The Defendants' failure to respond, in any way, to the Plaintiff's complaints resulted in the Plaintiff being constructively discharged from a job she had held for seven years, as the Plaintiff could no longer continue to work in the environment.

23. The Defendants' failure to appropriately respond to the Plaintiff's complaints, thereby allowing the hostile environment to continue, was reckless.

PREMISES CONSIDERED, the Plaintiff prays:

1. That process be issued and served upon the Defendants requiring them to answer within the time proscribed by law;

2. That a jury of twelve be empaneled to hear this action;

3. That, following a trial of this matter, judgment be entered for the Plaintiff on her claims of sex discrimination and harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*., enjoining the Defendant from engaging in such unlawful employment practices and awarding the Plaintiff compensatory damages, including but not limited to damages for lost wages, lost benefits, lost interest on wages and benefits, emotional distress, embarrassment, humiliation, and other incidental and consequential damages and expenses in the amount of $500,000.00, and punitive damages in the amount of $500,000.00 to be determined at trial pursuant to 42 U.S.C. §1981a, together with such equitable relief as the Court deems appropriate;

4. That the Plaintiff be awarded all costs associated with the prosecution of this action, including a reasonable attorney's fee and expert fees, in accordance with 42 U.S.C. §2000e-5(k); and

5. That the Plaintiff be awarded such further and general relief as the equities of this cause may require and the Court may deem just and proper.

*/s/ Kristi M. Davis*
KRISTI M. DAVIS (#019487)
Attorney for the Plaintiff
Hodges, Doughty & Carson, PLLC
P.O. Box 869
Knoxville, TN 37901-0869
(865) 292-2307
(865) 292-2321 [facsimile]
kdavis@hdclaw.com

## COST BOND

      We hereby acknowledge and bind ourselves for the prosecution of this action and payment of all non-discretionary costs in this Court, which may at any time be adjudged against the plaintiff/petitioner in the event the plaintiff/petitioner shall not pay them. Witness My Hand this 12th day of July, 2012.

                              */s/ Kristi M. Davis, its Member*
                              HODGES, DOUGHTY & CARSON, SURETY
                              617 W. Main Street
                              P.O. Box 869
                              Knoxville, TN 37901-0869
                              (865) 292-2307